# EXHIBIT E

# Exhibit E – Defendants' Expected Testimony of Dr. Thomas G. Matheson

## EXPECTED TESTIMONY OF DR. THOMAS G. MATHESON

Defendants anticipate relying upon testimony (by declaration) from Dr. Thomas G. Matheson (CV attached). Dr. Matheson may testify about his background, the background of the subject matter discussed in U.S. Patent Nos. 7,489,786 ("'786 patent") and 8,155,342 ("'342 patent"), and the level of one of ordinary skill in the art. In addition, Dr. Matheson may offer testimony in response or in rebuttal to any arguments or expert testimony offered by Plaintiff Blitzsafe or Blitzsafe's expert.

### '786 patent

*"first pre-programmed code portion" limitations in claims 1, 57, and 86*

Dr. Matheson is expected to testify that the term "a first pre-programmed code portion for remotely controlling the after-market audio device using the car stereo by receiving a control command from the car stereo through said first connector in a format incompatible with the after-market audio device, processing the received control command into a formatted command compatible with the after-market audio device, and transmitting the formatted command to the after-market audio device through said second connector for execution by the after-market audio device" of claim 1 recites functional language; that "pre-programmed code portion" is a nonce term without a definite structure; and that the entire claim term includes no recitation of structure readily identified by a person of ordinary skill in the art for completely performing that function, in support of the legal argument that the term is subject to pre-AIA 35 U.S.C. 112, 6th paragraph.

Dr. Matheson is expected to testify that the "first pre-programmed code portion" in claim 1 performs the following functions:

- remotely controlling the after-market audio device using the car stereo by receiving a control command from the car stereo through said first connector in a format incompatible with the after-market audio device;

- processing the received control command into a formatted command compatible with the after-market audio device; and

- transmitting the formatted command to the after-market audio device through said second connector for execution by the after-market audio device.

Dr. Matheson is expected to testify that the term "first pre-programmed code portion" in claim 1 does not have a recognizable meaning or convey any structure to a person of ordinary skill in the art.

Dr. Matheson is expected to testify that the "first pre-programmed code portion" of claim 1 is first used in the specification of the '786 patent to describe the embodiments illustrated in Table 1 (Col. 17, ll. 31-62); that the functions identified above are clearly linked to a microprocessor programmed to execute the code portion shown in Table 1 (Col. 17, ll. 31-62); and that the '786 patent provides no additional disclosure of an algorithm for performing the functions.

Dr. Matheson is also expected to testify that the terms "a first pre-programmed code portion for generating a device presence signal and transmitting the signal to the car stereo to maintain the car stereo in an operational state" of claim 57 and "first pre-programmed means for generating a device presence signal and transmitting the signal to the car stereo to maintain the car stereo in an operational state" of claim 86 recite functional language; that "pre-programmed code portion" is a nonce term without a definite structure; and neither entire claim term includes any recitation of structure readily identified by a person of ordinary skill in the art for completely performing that function, in support of the legal argument that these terms are subject to pre-AIA 35 U.S.C. 112, 6th paragraph.

## Exhibit E – Defendants' Expected Testimony of Dr. Thomas G. Matheson

Dr. Matheson is expected to testify that the "first pre-programmed code portion" in claim 57 performs the following function:

- generating a device presence signal and transmitting the signal to the car stereo to maintain the car stereo in an operational state.

Dr. Matheson is expected to testify that the "first pre-programmed code portion" in claim 86 performs the following function:

- generating a device presence signal and transmitting the signal to the car stereo through said first electrical connector to maintain the car stereo in an operational state responsive to signals generated by the after-market video device.

Dr. Matheson is also expected to testify that neither the term "first pre-programmed code portion" in claim 57 nor the term "first pre-programmed code portion" in claim 86 has recognizable meaning or conveys any structure to a person of ordinary skill in the art.

Additionally, Dr. Matheson is expected to testify that claims 57 and 86 of the '786 patent do not include any recitation of physical structure with respect to the respective "first pre-programmed code portion." Further, Dr. Matheson is expected to testify that the '786 patent provides no disclosure of structure or an algorithm for performing the device presence functions.

*"second pre-programmed code portion" limitations in claims 1 and 57*

Dr. Matheson is expected to testify that the term "a second pre-programmed code portion for receiving data from the after-market audio device through said second connector in a format incompatible with the car stereo, processing the received data into formatted data compatible with the car stereo, and transmitting the formatted data to the car stereo through said first connector for display by the car stereo" of claim 1 recites purely functional language; that "pre-programmed code portion" is a nonce term without a definite structure; and that the entire claim

# Exhibit E – Defendants' Expected Testimony of Dr. Thomas G. Matheson

term includes no recitation of structure readily identified by a person of ordinary skill in the art for completely performing that function, in support of the legal argument that the term is subject to pre-AIA 35 U.S.C. 112, 6th paragraph.

Dr. Matheson is expected to testify that the "second pre-programmed code portion" in claim 1 performs the following functions:

- receiving data from the after-market audio device through said second connector in a format incompatible with the car stereo;
- processing the received data into formatted data compatible with the car stereo; and
- transmitting the formatted data to the car stereo through said first connector for display by the car stereo

Dr. Matheson is expected to testify that the "second pre-programmed code portion" of claim 1 is first used in the specification of the '786 patent to describe the embodiments illustrated in Table 2 (Col. 18, ll. 15-51); that the functions identified above are clearly linked to a microprocessor programmed to execute the code portion shown in Table 2 (Col. 18, ll. 15-51); and that the '786 patent provides no additional disclosure of an algorithm for performing the functions.

Dr. Matheson is expected to testify that the term "a second pre-programmed code portion for remotely controlling the MP3 player using the car stereo by receiving a control command from the car stereo through said first electrical connector in a format incompatible with the MP3 player, processing the control command into a formatted control command compatible with the MP3 player, and transmitting the formatted control command to the MP3 player through said second electrical connector for execution by the MP3 player" of claim 57 recites purely functional language; that "pre-programmed code portion" is a nonce term without a definite

structure; and that the entire claim term includes no recitation of structure readily identified by a person of ordinary skill in the art for completely performing that function, in support of the legal argument that the term is subject to pre-AIA 35 U.S.C. 112, 6th paragraph.

Dr. Matheson is expected to testify that the "second pre-programmed code portion" in claim 57 performs the following functions:

- remotely controlling the MP3 player using the car stereo by receiving a control command from the car stereo through said first electrical connector in a format incompatible with the MP3 player;

- processing the control command into a formatted control command compatible with the MP3 player; and

- transmitting the formatted control command to the MP3 player through said second electrical connector for execution by the MP3 player

Dr. Matheson is expected to testify that the "second pre-programmed code portion" of claim 57 is first used in the specification of the '786 patent to describe the embodiments illustrated in Table 1 (Col. 17, ll. 31-62); that the functions identified above are clearly linked to a microprocessor programmed to execute the code portion shown in Table 1 (Col. 17, ll. 31-62); and that the '786 patent provides no additional disclosure of an algorithm for performing the functions.

*"third pre-programmed code portion" limitation in claim 1*

Dr. Matheson is expected to testify that the term "a third pre-programmed code portion for switching to one or more auxiliary input sources connected to said third electrical connector" of claim 1 recites purely functional language; that "pre-programmed code portion" is a nonce term without a definite structure, and that the entire claim term includes no recitation of structure

readily identified by a person of ordinary skill in the art for completely performing that function, in support of the legal argument that the term is subject to pre-AIA 35 U.S.C. 112, 6th paragraph.

Dr. Matheson is expected to testify that the "third pre-programmed code portion" in claim 1 performs the following function:

- switching to one or more auxiliary input sources connected to said third electrical connector.

Dr. Matheson is expected to testify that the "third pre-programmed code portion" of claim 1 is first used in the specification of the '786 patent to describe the embodiments illustrated in Reference No. 198 of FIG. 4D as described in Col. 14, ll. 43-48 and Col. 15, ll. 13-23, and Reference No. 316 of FIG. 5 as described in Col. 19, ll. 48-52; that the functions identified above are clearly linked to a microprocessor programmed to execute the flow diagram of Reference No. 198 of FIG. 4D as described in Col. 14, ll. 43-48 and Col. 15, ll. 13-23, and Reference No. 316 of FIG. 5 as described in Col. 19, ll. 48-52; and that the '786 patent provides no additional disclosure of an algorithm for performing the functions.

*"second code portion" limitation in claim 90*

Dr. Matheson is expected to testify that the term "a second code portion for receiving a control signal from the car . . . , processing a received control signal . . ., and transmitting the formatted control signal . . ." of claim 90 recites purely functional language; that "pre-programmed code portion" is a nonce term without a definite structure; and that the entire claim term includes no recitation of structure readily identified by a person of ordinary skill in the art for completely performing that function, in support of the legal argument that the term is subject to pre-AIA 35 U.S.C. 112, 6th paragraph.

## Exhibit E – Defendants' Expected Testimony of Dr. Thomas G. Matheson

Dr. Matheson is expected to testify that the "second code portion" in claim 90 performs the following functions:

- receiving a control signal from the car stereo in a format incompatible with the video device;
- processing a received control signal into a formatted control signal compatible with the video device; and
- transmitting the formatted control signal to the video device for execution thereby.

Dr. Matheson is expected to testify that the "second code portion" of claim 90 is first used in the specification of the '786 patent to describe the embodiments illustrated in Table 1 (Col. 17, ll. 31-62); that the functions identified above are clearly linked to a microprocessor programmed to execute the code portion shown in Table 1 (Col. 17, ll. 31-62); and that the '786 patent provides no additional disclosure of an algorithm for performing the functions.

*"third code portion" limitation in claims 60 and 91*

Dr. Matheson is expected to testify that the term "a third code portion for receiving data from the MP3 player . . . , processing received data . . . , and transmitting formatted data . . ." of claim 60 recites purely functional language; that "pre-programmed code portion" is a nonce term without a definite structure; and that the entire claim term includes no recitation of structure readily identified by a person of ordinary skill in the art for completely performing that function, in support of the legal argument that the term is subject to pre-AIA 35 U.S.C. 112, 6th paragraph.

Dr. Matheson is expected to testify that the "second pre-programmed code portion" in claim 60 performs the following function:

- receiving data from the MP3 player in a format incompatible with the car stereo;
- processing received data into formatted data compatible with the car stereo; and

- transmitting formatted data to the car stereo for display thereby.

Dr. Matheson is expected to testify that the "second pre-programmed code portion" of claim 60 is first used in the specification of the '786 patent to describe the embodiments illustrated in Table 2 (Col. 18, ll. 15-51); that the functions identified above are clearly linked to a microprocessor programmed to execute the code portion shown in Table 2 (Col. 18, ll. 15-51); and that Dr. Matheson is also expected to testify that the '786 patent provides no additional disclosure of an algorithm for performing the functions.

Dr. Matheson is expected to testify that the term "a third code portion for receiving data from the video device incompatible with the car stereo, processing received data into formatted" of claim 91 recites purely functional language; that "pre-programmed code portion" is a nonce term without a definite structure; and that the entire claim term includes no recitation of structure readily identified by a person of ordinary skill in the art for completely performing that function, in support of the legal argument that the term is subject to pre-AIA 35 U.S.C. 112, 6th paragraph.

Dr. Matheson is expected to testify that the "third code portion" in claim 91 performs the following function:

- receiving data from the video device incompatible with the car stereo;
- processing received data into formatted data compatible with the car stereo; and
- transmitting formatted data to the car stereo for display thereon.

Dr. Matheson is expected to testify that the "third code portion" of claim 91 is first used in the specification of the '786 patent to describe the embodiments illustrated in Table 2 (Col. 18, ll. 15-51);that the functions identified above are clearly linked to a microprocessor programmed to execute the code portion shown in Table 2 (Col. 18, ll. 15-51); and that the '786 patent provides no additional disclosure of an algorithm for performing the functions.

# Exhibit E – Defendants' Expected Testimony of Dr. Thomas G. Matheson

**'342 patent**

Dr. Matheson is expected to testify that the term "integration subsystem" has no recognizable meaning and does not convey any particular structure to a person of ordinary skill in the art.

Additionally, Dr. Matheson is expected to testify that claims 49, 73, 97, and 120 of the '342 patent do not include any recitation of physical structure with respect to the "integration subsystem." Dr. Matheson is expected to testify that the term "integration subsystem" of claims 49, 73, 97, and 120 recites purely functional language; that "integration subsystem" is a nonce term without a definite structure; and that the entire claim term includes no recitation of structure readily identified by a person of ordinary skill in the art for completely performing that function, in support of the legal argument that the term is subject to pre-AIA 35 U.S.C. 112, 6th paragraph.

Dr. Matheson is expected to testify that the integration subsystem in claims 49 and 73 perform the following functions:

- obtaining, using said wireless communication link, information about an audio file stored (claim 49) or received (claim 73) on the portable device;
- transmitting the information to the car audio/video system for subsequent display;
- instructing the portable device to play the audio file in response to a user selecting the audio file using controls of the car audio/video system; and
- receiving audio generated by the portable device over the wireless communication link.

Dr. Matheson is expected to testify that the functions of the integration subsystem in claim 97 are:

- channeling audio generated by the portable device to the car audio/video system using the wireless communication link for subsequent playing;

- receiving a control command from a user in a format incompatible with the portable device;

- processing the control command into a formatted command compatible with the portable device; and

- dispatching the formatted command to the portable device.

Dr. Matheson is expected to testify that the functions of the integration subsystem recited in claim 120 are:

- instructing the portable device to play an audio file in response to a user selecting the audio file using controls of the car audio/video system;

- channeling audio generated by the portable device to the car audio/video system using the wireless communication link for subsequent playing;

- receiving data generated by the portable device in a format incompatible with the car audio/video system;

- processing the data into formatted data compatible with the car audio/video system; and

- transmitting the processed data to the car audio/video system for subsequent display.

Dr. Matheson is expected to testify that the term "integration subsystem" is first used in the specification of the '342 patent to describe the embodiments illustrated in FIGS. 18-24, and that the functions identified above are clearly linked to a programmed processor that performs the method of FIG. 24. Dr. Matheson is also expected to testify that the '342 patent provides no

sufficient disclosure of an algorithm or structure for performing the functions of the "integration subsystem."

Dr. Matheson is expected to testify that at least the following functions each corresponds to a single step in the flowchart of FIG. 24: "obtaining… information about an audio file" in claims 49 and 73 and "receiving data" in claim 120 are encompassed only by step 1460; "channels audio generated by the portable device to the car audio/video system" in claims 97 and 120 are encompassed only by step 1462; and the "receiving a control command" in claim 97 is encompassed only by step 1464. Additionally, Dr. Matheson is expected to testify that the '342 patent does not provide any meaningful detail to explain to a person of ordinary skill in the art how the integration subsystem obtains information about an audio file, receives data generated by the portable device in a format incompatible with the car audio/video system, channels audio, or receives a control command issued by a user through one or more controls of the car audio/video system in a format incompatible with the portable device.

Dr. Matheson is expected to testify that the only corresponding structure for the "integration subsystem" of claims 49, 73, 97, and 120 is disclosed generally as a microcontroller or processor programmed to perform the method illustrated in FIG. 24, although without sufficient disclosure of an algorithm or specific set of instructions or rules for performing the functions on the microcontroller or processor. More specifically, Dr. Matheson is expected to testify that, in his opinion, the '342 patent does not sufficiently describe a corresponding structure (*e.g.*, algorithm) so as to allow a person of ordinary skill in the art to practice the claim without substantial additional information or disclosure. In particular, the '342 patent does not disclose to a person of ordinary skill in the art which algorithm to use to perform the following functions in claims 49, 73, 97, and 120.

# Exhibit E – Defendants' Expected Testimony of Dr. Thomas G. Matheson

In claims 49 and 73:

- obtaining, using a wireless communication link, information about an audio file stored (claim 49) or received (claim 73) on the portable device;
- transmitting the information to the car audio/video system for subsequent display;
- instructing the portable device to play the audio file in response to a user selecting the audio file using controls of the car audio/video system; and
- receiving audio generated by the portable device over the wireless communication link.

In claim 97:

- channeling audio generated by the portable device to the car audio/video system using a wireless communication link for subsequent playing;
- receiving a control command from a user in a format incompatible with the portable device;
- processing the control command into a format compatible with the portable device; and
- dispatching the formatted command to the portable device.

In claim 120:

- instructing the portable device to play an audio file in response to a user selecting the audio file using controls of the car audio/video system;
- channeling audio generated by the portable device to the car audio/video system using a wireless communication link for subsequent playing;
- receiving data from the portable device in a format incompatible with the car audio/video system;

# Exhibit E – Defendants' Expected Testimony of Dr. Thomas G. Matheson

- processing the data into a format compatible with the car audio/video system; and

- transmitting the processed data to the car audio/video system for subsequent display.

The following functions are associated with the listed claims.

| Claims | Function |
|---|---|
| Claims 53, 77 | receiving a control command issued at the car audio/video system in a format incompatible with the portable device; processing the control command into a formatted command compatible with the portable device; and dispatching the processed control command to the portable device |
| Claims 54, 78 | receiving data generated by the portable device in a format incompatible with the car audio/video system; processing the data into formatted data compatible with the car audio/video system; and transmitting the processed data to the car audio/video system for subsequent display |
| Claims 56, 106 | generating a device presence signal and transmitting the device presence signal to the car audio/video system to maintain the car audio/video system in a state responsive to the portable device |
| Claims 57, 80, 103 | instructing said portable device to play a desired file in response to a spoken command processed by the voice recognition subsystem |
| Claims 66, 94 | obtaining, [using / over] said wireless communication link, information about a video file [stored on / received by] the portable device for subsequent display; instructing the portable device to play the video file in response to a user selecting the video file using controls of the car audio/video system; and receiving video generated by the portable device over said wireless communication link |
| Claim 70 | receiving video generated by the portable device in a first format incompatible with the car audio/video system; processing the video into processed video in a second format compatible with the car audio/video system; and transmitting the processed video to the car audio/video system for subsequent display |
| Claim 113 | channeling video generated by the portable device to the car audio/video system over the wireless communication link for subsequent playing |

## Exhibit E – Defendants' Expected Testimony of Dr. Thomas G. Matheson

| Claims | Function |
|--------|----------|
|        |          |

Additionally, Dr. Matheson is expected to testify that the term "integration subsystem" is first used in the '342 patent with reference to FIGS. 18-24. Dr. Matheson is expected to testify that the '342 patent discloses no discernible circuitry to a person of ordinary skill in the art. Specifically, Dr. Matheson is expected to testify that "circuitry similar to the circuitry disclosed in the various embodiments of the present invention discussed herein" (Col. 63, ll. 63-65) is generalized and ambiguous such that it conveys no recognizable meaning. Dr. Matheson is expected to testify further that the '342 patent makes clear that the exemplary circuitry includes nothing more than a microcontroller performing the algorithm of FIG. 24. Thus, at best, the '342 patent as a whole recites circuitry incapable of performing the algorithm for performing the recited functions.

Attached herewith is Dr. Matheson's CV.

# Thomas G. Matheson

tgm@guidescope.com
PO Box 221
7 Abbington Way
Brookside, NJ 07926
Phone: 973-543-3204

**Professional Experience**

**1998 - 2018**  Brookside, NJ
**Independent Consultant**
Areas of emphasis include:
- Technology (IC, circuit, microcontroller, and system design, Instrumentation, CAD software, and Graphics)
- Web-based software design and development (Database design and interfacing, Content management, and File archiving)

**1996 - 1998**  **Mentor Graphics**  Warren, NJ
**Chief Scientist**
- External representative & internal consultant. Received 2 patents. Attended Wharton.

**1993 - 1995**  **Mentor Graphics**  Warren, NJ
**General Manager**
- General management responsibility for the Warren, NJ site: over 100 professionals, a budget of $13 million, and three major software product lines.

**1990 - 1993**  **Mentor Graphics**  Warren, NJ
**Software Architect**
- Following purchase of Silicon Compiler Systems by Mentor Graphics, responsible for software product architecture and design processes.

**1984 – 1990**  **Silicon Compiler Systems**  Liberty Corner, NJ
**Founder / Director**
- Co-founder of successful electronic-design-automation start-up (originally named Silicon Design Labs). Managed software design and development.

**1981 - 1984**  **AT&T Bell Labs**  Murray Hill, NJ
**Member Technical Staff**
- Research in computer-aided IC design and graphics. Co-developed first silicon compiler to produce a microcomputer from high-level specifications. Received patent.

**Education**

**1996 - 1998**  **The Wharton School**  Philadelphia, PA
**MBA**
- Graduated as a Palmer Scholar (top 5% of graduating class). Emphasis in entrepreneurship, innovation, business process, and strategy.

**1976 - 1980**  **University of Oregon**  Eugene, OR
**Ph.D. Physics**
- Emphasis in Experimental Solid State Physics. Thesis investigated fundamental physics under gates of MOSFET transistors.

**1974 - 1976**  **University of Oregon**  Eugene, OR
**M.A. Physics**

**1970 - 1974**  **Abilene Christian University**  Abilene, TX
**B.S. Physics and Mathematics**
- Graduated Summa Cum Laude.

| | |
|---|---|
| **Publications** | R. J. Higgins, R. H. Hendel, T. G. Matheson, and D. W. Terwilliger, "Microcomputer Controller for a Superconducting Solenoid," J. Phys. E: Sci. Instrum., (11), pp. 1059-67, 1978. |
| | T. G. Matheson and R. J. Higgins, "Microprocessor Assisted Real-Time Harmonic Analysis by Minicomputer," Rev. Sci. Instrum., 49(12), pp. 1694-7, Dec., 1978. |
| | T. G. Matheson and R. J. Higgins, "Magnetic Breakdown in the Tipped Si 'Supperlattice'," Proc. 15th International Conference on Semiconductor Physics, Kyoto, 1980. |
| | T. G. Matheson, "Tunneling and Lifetime Effects in Tipped Silicon Inversion Layers," Ph.D. dissertation, University of Oregon, December 1980. |
| | T. G. Matheson and R. J. Higgins, "Tunneling In Tilted Si Inversion Layers," Physical Review B, pp. 2633-44, Feb. 15, 1982. |
| | C. Christensen, T. G. Matheson, and M. R. Buric, "Simulation and Verification of Plex Microcomputers," Proc. International Conference on Computer Aided Design (ICCAD '83), pp. 57-8, 1983. |
| | M. R. Buric, C. Christensen, and T. G. Matheson, "The Plex Project: VLSI Layouts of Microcomputers Generated by a Computer Program," Proc. International Conference on Computer Aided Design (ICCAD '83), pp. 49-50, 1983. |
| | T. G. Matheson, M. R. Buric, and C. Christensen, "Embedding Electrical and Geometric Constraints in Hierarchical Circuit-Layout Generators," Proc. International Conference on Computer Aided Design (ICCAD '83), pp. 3-4, 1983. |
| | T. G. Matheson, C. Christensen, and M. R. Buric, "A Software Environment for Building Core-Microcomputer Compilers," Proc. International Conference on Computer Design: VLSI in Computers (ICCD '85), pp. 221-4, 1985. |
| | Misha R. Buric and T. G. Matheson, "Silicon Compilation Environments," Proc. Custom Integrated Circuits Conference (CICC '85), pp. 208-12, 1985. |
| | T. G. Matheson, "Development Tool Set Lets Any Designer Build Silicon Compilers," Electronic Design, pp. 209-15, January 9, 1986. |
| | J. Duh, T. G. Matheson, and Ed Hepler, "Efficiently Embedding Expertise in High-Density Process-Portable Standard Cell Generators," Proc. IEEE 1996 Custom Integrated Circuits Conference, pp. 497-500, 1996. |
| | Donald G. Baltus, Thomas Varga, Robert C. Armstrong, John Duh, and T. G. Matheson, "Developing A Concurrent Methodology For Standard-Cell Library Generation," Proc. Design Automation Conference, June 1997. |
| | Tom Matheson, "Astrophotography To Go," Sky & Telescope, July 1998, pp. 119-24. |
| | T. G. Matheson, "Creating a Rotating Mars", Sky & Telescope, Feb. 2004, pp. 129-32. |
| | Images in: Sky & Telescope, February 2001, pp. 92; Sky & Telescope, June 2004, p.12; Night Sky magazine, July/August 2005, p.19; Mike Lynch's "Starwatch" series of books; NASA APOD Dec. 4, 2007; "Full Meridian of Glory" by Paul Murdin; Popular Science, November 2013, p. 68; The "Know More" page of the Washington Post, December 19, 2014; and a variety of textbooks, brochures, news sites, and reports. |
| **Patents** | Thomas G. Matheson, "System, method, and station interface arrangement for playing video game over telephone lines," United States Patent 4,570,930, Oct. 3, 1983. |
| | Glenn Wikle, Suresh Ramaswamy, and Thomas G. Matheson, "Integrated circuit design apparatus with multiple connection modes," United States Patent 5,610,832, Mar. 11, 1997. |
| | Thomas G. Matheson, Joseph F. Cicchiello, and Glenn Wikle, "Integrated circuit design apparatus with extensible circuit elements," United States Patent 5,592,392, Jan. 7, 1997. |
| **Associations** | Member of the Institute of Electrical and Electronics Engineers |